```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

Roberta Raye Kessler

    v.                                         Civil No. 16-cv-349-JD
                                                Opinion No. 2017 DNH 082
Nancy A. Berryhill,
Acting Commissioner,
Social Security Administration


O R D E R

Roberta Raye Kessler seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of Social Security, denying her application for disability insurance benefits under Title II, 42 U.S.C. § 423. Kessler contends that the Administrative Law Judge ("ALJ") erred in failing to find that she had severe medically determinable mental impairments before her date last insured. The Acting Commissioner moves to affirm.

## Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276

F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Castillo Condo. Ass'n v. U.S. Dep't of Housing & Urban Dev., 821 F.3d 92, 97 (1st Cir. 2016) (internal quotation marks omitted). "[S]ubstantial evidence does not mean either uncontradicted evidence or overwhelming evidence" but instead can be satisfied "even if the record arguably could justify a different conclusion." Id. (internal quotation marks omitted).

Background

Kessler applied for social security disability benefits in November of 2013, claiming an onset of disability in December of 2004. Kessler claimed disability due to depression, anxiety, and an eating disorder. Her date last insured was December 31, 2009.

Before her administrative hearing, Kessler amended the onset date of disability to December 1, 2009, when she was fifty-five years old. Kessler completed four years of college and had worked as a general officer helper. She lost her job in 2004, which exacerbated her mental health symptoms.

Kessler's medical records show that she demonstrated an anxious mood or affect in April 2005. She was diagnosed with depression in October of 2004. Her primary care physician prescribed medication to treat depression.

In July of 2007, Dr. Cambrone did an initial psychiatric examination. Kessler reported six years of depression, exacerbated by the loss of her job and the death of friends. On examination, Dr. Cambrone found that Kessler appeared older than her age, her eye contact was poor, she showed psychomotor retardation, and her mood was depressed. Dr. Cambrone also found that Kessler's hygiene and grooming were good, her interaction was good, and her insight and judgment were good. Dr. Cambrone diagnosed major depressive disorder, recurrent.

In September of 2007, Dr. Cambrone made the same diagnosis, increased Kessler's dose of one medication, and added another medication. The next month Dr. Cambrone decreased some medications because of too much sedation. At the following monthly appointments, Dr. Cambrone changed medications and doses to address Kessler's continuing depression and anxiety.

In December of 2007, Dr. Cambrone noted that Kessler's depression had worsened, but she refused psychotherapy treatment. Beginning in December of 2007, Kessler's husband accompanied her to appointments with Dr. Cambrone. Dr. Cambrone continued to diagnose major depressive disorder and increased or

3

changed Kessler's medications as needed.  In March of 2008, Kessler reported no improvement and said that she wanted to stop taking medications.  Dr. Cambrone lowered her dose and told her she could discontinue medication in two weeks.

Kessler switched to treatment with psychiatrist Dr. Albert Kaplan in 2009.  When asked, Dr. Kaplan was unable to find Kessler's records.  He wrote a letter in January of 2014, in which he stated that he had a "vivid memory" of Kessler as a "frightened, anxious depressed woman" and that he had treated her for about a two year period, from 2009 to 2011, with weekly psychotherapy and medication.  He also said that Kessler made only slight, if any, progress.  Dr. Kaplan remembered that Kessler had severe anorexia, which required hospitalization, and "situational issues" when her husband was laid off from work, her mother had health issues, and she had difficulties with her adult children.  Dr. Kaplan said that Kessler could not work and that her husband had to be with her during most, if not all, of Kessler's treatment sessions.

Kessler also provided medical records for treatment after her date last insured.  Her treatment records with her primary care physician, Dr. Daniel Goldman, confirm that Kessler was receiving psychiatric treatment with Dr. Kaplan.  Dr. Goldman also noted Kessler's depression and the effects of depression.

4

On September 9, 2011, Kessler was evaluated by Jennifer Bush and Dr. Layden at the University of Pennsylvania Center for Cognitive Therapy.  On examination, they noted that Kessler was disheveled, her affect was flat, her mood was depressed, she had suicidal ideation, and her judgment was impaired.  They diagnosed major depressive disorder, severe; generalized anxiety disorder, and avoidant personality disorder.  Her GAF score was assessed at 33 with a possible high of 38 over the past year.[1]

Kessler was also evaluated by Dr. Ryan at the Center for Cognitive Therapy on September 27, 2011, who asked that Kessler's husband join them for the session.  Kessler was severely underweight, disheveled, and wearing more clothing than necessary for the weather.  On examination, Kessler had retarded motor activity, depressed mood, dysphoric affect, slow speech, blocked thought process, somnolent orientation, and slow or

---

[1] GAF is an abbreviation for global assessment of functioning. The Social Security Administration considers GAF scores, along with other opinion evidence, but will only give the scores significant weight when they are supported by other evidence. See Lopez v. Colvin, 2017 WL 1217111, at *13 (D. Mass. Mar. 31, 2017).  "A GAF score of 31 to 40 reflects '[s]ome impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g. depressed man avoids friends, neglects family, and is unable to work) . . . ).'" West v. Colvin, 2016 WL 7048694, at *9, n.4 (D. Me. Dec. 5, 2016) (quoting American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000) ("DSM-IV-TR")).

sluggish concentration. Her insight and judgment were poor. Dr. Ryan diagnosed major depressive disorder, severe, and a possible dependent personality disorder. Dr. Ryan also discussed Kessler's condition at length with Dr. Kaplan who was then Kessler's treating psychiatrist.

In April of 2012, Kessler was admitted to an eating disorder facility because of her weight loss, where she was treated for a month. Kessler was diagnosed with anorexia nervosa, secondary to depression and severe depression. Her GAF score was assessed to be between 25 and 30.[2] When she left the facility, Kessler's GAF score was assessed at 45, with extremely poor insight and judgment.[3]

Kessler continued treatment for depression and her eating disorder after her discharge. In July of 2013, Kessler was admitted for inpatient psychiatric treatment at Dartmouth-Hitchcock Medical Center for a week. Kessler demonstrated

---

[2] "A GAF score of 21 and 30 indicates behavior that is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicide preoccupation) or inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)." Joint Statement of Material Facts, doc. no. 11, at 12, n.4, (citing DSM-IV-TR at 34).

[3] "GAF score of 41 to 50 indicates "[s]erious symptoms (e.g., suicidal ideation, several obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Id.

6

symptoms of depression that showed a worsening ability to function. Her GAF score was assessed at 25. Kessler was given electroconvulsive therapy (ECT) and was discharged in satisfactory condition. Kessler continued to receive treatment for depression.

On February 3, 2014, Dr. Michael Schneider, a state agency psychologist consultant, reviewed some of Kessler's records. Because Dr. Schneider was not given Kessler's records before her date last insured, December 31, 2009, he concluded that she had no medically determinable impairments during the relevant time.

Dr. Kaplan submitted a second letter in August of 2014 because he could not find Kessler's records. He completed a form to show Kessler's symptoms, but he did not complete the part related to her functional limitations.

Dr. Roston, a psychiatrist at West Central Behavioral Health, began treating Kessler in July of 2013. In November of 2014, Dr. Roston provided a written opinion in which she described Kessler's symptoms and noted that Kessler was not able to function in a work role, at home, or for her own self care. Dr. Roston also wrote, based on Kessler's medical history, that Kessler had been chronically fatigued and unable to work since 1990. She also found that Kessler had been limited on a sustained basis in nearly all of the functional categories on the Mental Impairment Questionnaire. Dr. Duncan, who had

7

treated Kessler since 2013, stated that she suffered from severe, treatment-resistant depression with psychosis which severely limited her daily functioning.

A hearing was held on Kessler's application on May 14, 2015. Kessler had an appointed representative at the hearing and testified. Her husband also testified.

The ALJ issued a decision on June 9, 2015, finding, at Step Two, that Kessler had medically impairments of depression and anxiety before her date last insured but that neither impairment nor the combination of the impairments was severe at that time.[4] As a result, the ALJ completed the sequential analysis at Step Two and found that Kessler was not disabled. The Appeals Council denied review.

## Discussion

Kessler contends that the ALJ erred in finding at Step Two that she did not have severe medically determinable impairments and erred in failing to use a medical expert to review Kessler's

---

[4] In determining whether a claimant is disabled, the ALJ follows a five-step sequential analysis. 20 C.F.R. § 404.1520. The steps are (1) determining whether the claimant is engaged in substantial gainful activity; (2) determining whether she has a severe impairment; (3) determining whether the impairment meets or equals a listed impairment; (4) assessing the claimant's residual functional capacity and her ability to do past relevant work; and (5) determining whether the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a).

8

medical evidence before her date last insured.  The Acting Commissioner moves to affirm, arguing that although the evidence could support different conclusions, there is adequate evidence to support the decision.  The Acting Commissioner also argues that expert medical testimony was not needed because the record unambiguously shows that Kessler was not disabled before her date last insured.

A. Insured Status

To be eligible for disability insurance benefits, the claimant must show that she was disabled before the expiration of her insured status, known as the date last insured.  [Cruz Rivera v. Sec'y of Health & Human Servs.](), 818 F.2d 96, 97 (1st Cir. 1986); [Titles II and XVI: Onset of Disability](), ("SSR 83-20"), 1983 WL 31249, at *1 (Jan. 1, 1983) ("A title II worker cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition(s).").  Therefore, an ALJ is required to determine, based on the record evidence, at least whether the claimant was disabled before her date last insured.  SSR 83-20, at *1; [Fisher v. Colvin](), 831 F.3d 31, 34-35 (1st Cir. 2016).

When the alleged disability is of a nontraumatic origin, the ALJ considers the "applicant's allegations, work history, if any, and the medical and other evidence concerning impairment

9

severity." SSR 83-20, at *2. The medical evidence may allow the ALJ to infer whether the claimant had disabling impairments before her date last insured, the onset date, or may be insufficient so that additional information is needed. Id. at *3. "At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred." Id.

B. Step Two

In this case, the ALJ concluded his analysis at Step Two. Step Two operates as a screening mechanism to identify those medically determinable impairments that could affect the claimant's ability to work. McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1122-26 (1st Cir. 1986). The screening mechanism is "no more than a de minimis policy" so that "'[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step.'" Id. at 1125 (quoting Titles II and XVI: Medical Impairments That Are Not Severe, ("SSR 85-28"), 1985 WL 56856).

The ALJ here candidly acknowledged the lack of opinion evidence about the severity of Kessler's mental impairments before her date last insured and discounted the retrospective

10

opinions that were provided. The ALJ also acknowledged that there were no mental functional capacity assessments for him to consider and that he was not permitted to interpret raw medical data to assess functional capacity.

Nevertheless, the ALJ decided that a medical advisor was not necessary because SSR 83-20 did not apply when the claimant had not been found to be disabled after her date last insured. Then, based on his own evaluation of the record, the ALJ found at Step Two that Kessler did not have a severe medically determinable impairment or combination of impairments before her date last insured.

C. Medical Advisor

Since the ALJ issued his decision, the First Circuit has examined SSR 83-20 and expressed doubt about the Acting Commissioner's "gaps and inconsistencies as to the general applicability of SSR 83-20." Fischer v. Colvin, 831 F.3d 31, 38 (1st Cir. 2016). The court assumed that SSR 83-20 applied in that case but concluded that the district court erred in finding that the medical evidence was ambiguous. Id. As a result, the court did not decide whether a medical advisor is necessary only when a claimant has been found to be disabled or also when disability and onset date must be inferred from ambiguous evidence without a present finding of disability.

As the First Circuit noted, courts have interpreted SSR 83-20 differently with respect to whether a finding of disability is necessary to trigger the requirement that an ALJ call on the services of a medical advisor when onset date must be inferred from ambiguous records. Fischer, 831 F.3d at 37. The debate continues.[5] See, e.g., Mazonson v. Colvin, 2016 WL 6776280, at *8-*9 (D. Mass. Nov. 15, 2016); Duncan v. Colvin, 2016 WL 5477567, at *4-*5 (D. Me. Sept. 28, 2016).

In this case, Kessler apparently did not apply for Supplemental Security Income benefits, and she has not shown that a disability determination was made after her date last insured. Therefore, even if SSR 83-20 did provide a requirement to use a medical advisor when a claimant was found to be disabled after her date last insured, here there was no finding of disability.

D. Substantial Evidence

As the ALJ acknowledged, the record lacks any mental residual functional capacity assessments done during the relevant period. He also acknowledged that he is not authorized

---

[5] On October 17, 2016, the Social Security Administration issued an "Emergency Message" to clarify that SSR 83-20 does not impose a mandatory requirement for a medical advisor under any circumstances. Harlan v. Berryhill, 2017 WL 1398535, at *3 (E.D. Cal. Apr. 19, 2017). The Emergency Message was issued after the ALJ's decision and was not raised in this case.

12

to interpret raw medical data in functional terms. See Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Nevertheless, the ALJ apparently thought that he could not call on the services of a medical advisor because that was not required under SSR 83-20.

Despite the recognized evidentiary issues and the lack of a finding of a severe impairment at Step Two, the ALJ effectively proceeded to Step Three to consider whether Kessler's medically determinable medical impairments, although not severe, would meet or equal the mental disorders described in Section 12.00C of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that Kessler had only "mild limitation" in the first three functional areas and had no episodes of decompensation.[6] It is unclear what evidence the ALJ used to support those findings.

Whether or not the ALJ was required under SSR 83-20 to call on the services of a medical advisor, the ALJ recognized that a gap existed in the records due to the absence of functional assessments. See Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). In addition, the ALJ rejected the opinions of Kessler's medical providers and relied solely on his own

---

[6] This appears to have been a tautological exercise given the ALJ's determination at Step Two that Kessler did not have a severe impairment or combination of impairments.

13

interpretation of the record.[7]  As a result, the ALJ "effectively substituted his own judgment for medical opinion" which he cannot do.  Alcantara v. Astrue, 257 F. App'x 333, 334 (1st Cir. 2007); Hall v. Colvin, 18 F. Supp. 3d 144, 152 (D.R.I. 2014).

As a result, substantial evidence does not support the ALJ's finding at Step Two that Kessler was not disabled.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse (document no. 9) is granted.  The Acting Commissioner's motion to affirm (document no. 13) is denied.

The case is remanded for further proceedings pursuant to Sentence Four of § 405(g).

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph DiClerico, Jr.
United States District Judge

April 25, 2017
cc: Janine Gawryl, Esq.
    Robert J. Rabuck, Esq.

---

[7] The ALJ said that he concurred with Dr. Schneider's opinion, which the ALJ misunderstood as concluding that there was insufficient evidence to show a severe medically determinable impairment before the date last insured.  Instead, Dr. Schneider was not given Kessler's records prior to December of 2013 and, therefore, could provide no opinion about a medically determinable impairment prior to Kessler's date last insured.